MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

ALEX SANTIAGO, CARLOS ENRIQUE TOJ
OVALLE, JERBI ELIAS MARTINEZ
DOMINGUEZ, JORGE VIRGILIO ROMAN
ROMAN, OSCAR CELESTINO YANEZ,
RAFAEL VASQUEZ DISLA, MIGUEL
SAMPEDRO SARTILLO, RODRIGO (A.K.A.
CARLOS) FLORES CAZARES, MALECIO
SANCHEZ CASADO, and HECTOR BATEN,
*individually and on behalf of others similarly*
*situated,*

|  | **COMPLAINT** |
|---|---|

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b) AND RULE 23**
**CLASS ACTION**

*Plaintiffs*,

-against-

**ECF Case**

DUNES FOOD GROUP, INC. (D/B/A
DELICE CAFE AND CATERING F/D/B/A
LIBERTY DELI), 2249 CORP. (D/B/A
DELICE CAFE AND CATERING F/D/B/A
LIBERTY DELI), ALIMADE LLC (D/B/A
DELI PLUS), SANJIV CHAND (A.K.A.
MIKE), AKBARALI B HIMANI, HORACIO
DOE, and ALFRED DOE,

*Defendants.*

-------------------------------------------------------X

        Plaintiffs Alex Santiago, Carlos Enrique Toj Ovalle, Jerbi Elias Martinez Dominguez,

Jorge Virgilio Roman Roman, Oscar Celestino Yanez, Rafael Vasquez Disla, Miguel Sampedro

Sartillo, Rodrigo (a.k.a. Carlos) Flores Cazares, Malecio Sanchez Casado and  Hector Baten,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as

against Dunes Food Group, Inc. (d/b/a Delice Cafe and Catering f/d/b/a Liberty Deli), 2249 Corp. (d/b/a Delice Cafe and Catering f/d/b/a Liberty Deli), Alimade LLC (d/b/a Deli Plus), ("Defendant Corporations"), Sanjiv Chand (a.k.a. Mike),  Akbarali B Himani,  Horacio Doe, and  Alfred Doe, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are both current and former employees of Defendants Dunes Food Group, Inc. (d/b/a Delice Cafe and Catering f/d/b/a Liberty Deli), 2249 Corp. (d/b/a Delice Cafe and Catering f/d/b/a Liberty Deli), Alimade LLC (d/b/a Deli Plus), Sanjiv Chand (a.k.a. Mike), Akbarali B Himani, Horacio Doe, and Alfred Doe.

2.       Defendants own, operate, or control two delis, located at 22 E 49th street, New York, NY 10017 and at 2 W 45th street, New York, NY 10036 under the name "Delice Cafe and Catering f/d/b/a Liberty Deli" and "Deli Plus," respectively.

3.      Upon information and belief, individual Defendants Sanjiv Chand (a.k.a. Mike), Akbarali B Himani, Horacio Doe, and Alfred Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the delis as a joint or unified enterprise.

4.      Plaintiffs have been employed as salad and food preparers, cooks, delivery workers, packer and dispatcher of orders, pizza makers and catering workers at the delis located at 22 E 49th street, New York, NY 10017 and at 2 W 45th street, New York, NY 10036.

5.      Plaintiffs Toj, Martinez, Roman, Yanez, Vasquez, Sanpedro and Sanchez have ostensibly been employed as delivery workers. However, they have been required to spend a considerable part of their work day performing non-tipped duties, including but not limited to baking cookies, cooking vegetables, cooking granola, cooking bacon, cleaning the basement,

cleaning the floors and the bathroom, getting sodas upstairs, organizing the refrigerators, washing dishes, cutting cheese, preparing food, preparing sauces, sweeping and mopping, stocking vegetables, sodas, water when the merchandise came to the store, stocking bagels and rolls, bringing up ice from the basement, bringing up food from downstairs like eggs, ham, cheese, cleaning the refrigerators, cutting cardboard boxes, taking out trash, cleaning the tables, vacuuming the entire store and cleaning the windows and glass (hereafter the "non-tipped duties").

6.     At all times relevant to this Complaint, Plaintiffs have worked for Defendants at least 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they have worked.

7.     Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.     Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have had to work over 10 hours a day.

9.     Furthermore, Defendants have repeatedly failed to pay Plaintiffs wages on a timely basis.

10.    Defendants have employed and accounted for Plaintiffs Toj, Martinez, Roman, Yanez, Vasquez, Sampedro and Sanchez as delivery workers in their payroll, but in actuality their duties have required a significant amount of time spent performing the non-tipped duties alleged above.

11.    At all relevant times, Defendants have paid these Plaintiffs at least at the minimum wage rate, but not for all of their hours worked.

12.    Under both the FLSA and NYLL, Defendants are not entitled to take a tip credit because these Plaintiffs' non-tipped duties have exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.    Upon information and belief, Defendants have employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This has allowed Defendants to avoid paying these Plaintiffs at the minimum wage rate and has enabled them to pay them at least at the tip-credit rate.

14.    In addition, Defendants have maintained a policy and practice of unlawfully appropriating these Plaintiffs' and other tipped employees' tips and have made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

15.    Further, Defendants have made improper deductions from Plaintiffs' wages; specifically, they have deducted time from their wages for meal breaks that they have not taken.

16.    Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

17.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

18.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq*. (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (herein

the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

19.    Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

21.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate two delis located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## PARTIES

### *Plaintiffs*

22.    Plaintiff Alex Santiago ("Plaintiff Santiago" or "Mr. Santiago") is an adult individual residing in Bronx County, New York. Plaintiff Santiago has been employed by Defendants at Delice Cafe and Catering (fka Liberty Deli) from approximately November 2017 until on or about the present date.

23.    Plaintiff Carlos Enrique Toj Ovalle ("Plaintiff Toj" or "Mr. Toj") is an adult individual residing in Bronx County, New York. Plaintiff Toj has been employed by Defendants

at Delice Cafe and Catering (fka Liberty Deli) from approximately March 2018 until on or about the present date.

24.    Plaintiff Jerbi Elias Martinez Dominguez ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Bronx County, New York. Plaintiff Martinez was employed by Defendants at Delice Cafe and Catering (fka Liberty Deli) from approximately March 2018 until on or about July 20, 2018.

25.    Plaintiff Jorge Virgilio Roman Roman ("Plaintiff Roman" or "Mr. Roman") is an adult individual residing in New York County, New York. Plaintiff Roman was employed by Defendants at Delice Cafe and Catering (fka Liberty Deli) and on a few occasions at Deli Plus from approximately February 2018 until on or about July 23, 2018.

26.    Plaintiff Oscar Celestino Yanez ("Plaintiff Yanez" or "Mr. Yanez") is an adult individual residing in Queens County, New York. Plaintiff Yanez was employed by Defendants at Delice Cafe and Catering (fka Liberty Deli) from approximately November 2017 until on or about July 25, 2018.

27.    Plaintiff Rafael Vasquez Disla ("Plaintiff Vasquez" or "Mr. Vasquez") is an adult individual residing in Bronx County, New York. Plaintiff Vasquez was employed by Defendants at Delice Cafe and Catering (fka Liberty Deli) from approximately March 2018 until on or about July 19, 2018.

28.    Plaintiff Miguel Sampedro Sartillo ("Plaintiff Sampedro" or "Mr. Sampedro") is an adult individual residing in Bronx County, New York. Plaintiff Sampedro was employed by Defendants at Delice Cafe and Catering (fka Liberty Deli) from approximately April 23, 2018 until on or about July 23, 2018.

29.    Plaintiff Rodrigo (a.k.a. Carlos) Flores Cazares ("Plaintiff Flores" or "Mr. Flores") is an adult individual residing in New York County, New York. Plaintiff Flores was employed by Defendants at Delice Cafe and Catering (fka Liberty Deli) from approximately April 15, 2018 until on or about July 24, 2018.

30.    Plaintiff Malecio Sanchez Casado ("Plaintiff Sanchez" or "Mr. Sanchez") is an adult individual residing in Queens County, New York. Plaintiff Sanchez was employed by Defendants at Delice Cafe and Catering (fka Liberty Cafe) from approximately November 2017 until on or about June 2018.

31.    Plaintiff Hector Baten ("Plaintiff Baten" or "Mr. Baten") is an adult individual residing in Bronx County, New York.  Plaintiff Baten was employed by Defendants at Delice Cafe and Catering (fka Liberty Cafe) from approximately May 2018 until on or about August 11, 2018.

*Defendants*

32.    At all relevant times, Defendants own, operate, or control two delis, located at 22 E 49th street, New York, NY 10017 and at 2 W 45th street, New York, NY 10036 under the name "Delice Cafe and Catering f/d/b/a Liberty Deli" and "Deli Plus."

33.    Upon information and belief, Dunes Food Group, Inc. (d/b/a Delice Cafe and Catering f/d/b/a Liberty Deli) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 22 E 49th street, New York, NY 10017.

34.    Upon information and belief, 2249 Corp. (d/b/a Delice Cafe and Catering f/d/b/a Liberty Deli) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 22 E 49th street, New York, NY 10017.

35.   Upon information and belief, Alimade LLC (d/b/a Deli Plus) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2 W 45th street, New York, NY 10036.

36.   Defendant Sanjiv Chand (a.k.a. Mike) is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Sanjiv Chand (a.k.a. Mike) is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Sanjiv Chand (a.k.a. Mike) possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

37.   Defendant Akbarali B Himani is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Akbarali B Himani is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Akbarali B Himani possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

38.   Defendant Horacio Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Horacio Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Horacio Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant

Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

39.    Defendant Alfred Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Alfred Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Alfred Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

40.    Defendants operate two delis located in the Midtown section of Manhattan in New York City.

41.    Individual Defendants, Sanjiv Chand (a.k.a. Mike), Akbarali B Himani, Horacio Doe, and Alfred Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

42.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

43.    Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

44.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

45.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

46.    Upon information and belief, Individual Defendants Sanjiv Chand (a.k.a. Mike) and Akbarali B Himani operate Defendant Corporations as either alter egos of themselves and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)    defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)    transferring assets and debts freely as between all Defendants,

d)    operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e)    operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f)    intermingling assets and debts of their own with Defendant Corporations,

g)    diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h)    Other actions evincing a failure to adhere to the corporate form.

47.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for Plaintiffs' services.

48.    In each year from 2017 to 2018, Defendants have, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

49.    In addition, upon information and belief, Defendants and/or their enterprise have been directly engaged in interstate commerce. As an example, numerous items that are used in the delis on a daily basis are goods produced outside of the State of New York.

### Individual Plaintiffs

50.    Plaintiffs are both current and former employees of Defendants who ostensibly have been employed as salad and food preparers, cooks, delivery workers, packers and dispatchers of orders, pizza makers and catering workers.

51.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

### Plaintiff Alex Santiago

52.    Plaintiff Santiago has been employed by Defendants from approximately November 2017 until on or about the present date.

53.    Defendants have employed Plaintiff Santiago as a catering worker and a salad preparer.

54.    Plaintiff Santiago has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

55.    Plaintiff Santiago's work duties have required neither discretion nor independent judgment.

56.    Throughout his employment with Defendants, Plaintiff Santiago has regularly worked in excess of 40 hours per week.

57.    From approximately November 2017 until on or about December 2017, Plaintiff Santiago worked from approximately 6:00 a.m. until on or about 3:30 p.m., 5 days a week (typically 47.5 hours per week).

58.    From approximately January 2018 until on or about July 14, 2018, Plaintiff Santiago worked from approximately 6:00 a.m. until on or about 4:30 p.m., 5 days a week (typically 52.5 hours per week).

59.    From approximately July 15, 2018 until the present date, Plaintiff Santiago has worked from approximately 5:00 a.m. until on or about 3:30 p.m., 5 days a week (typically 52.5 hours per week).

60.    Throughout his employment, Defendants have paid Plaintiff Santiago his wages in cash.

61.    From approximately November 2017 until on or about June 2018, Defendants paid Plaintiff Santiago a fixed salary of $600 per week.

62.    From approximately July 2018 until the present date, Defendants have paid Plaintiff Santiago a fixed salary of $650 per week.

63.    For approximately two weeks, Defendants have not paid Plaintiff Santiago any wages for his work. Defendants owe Plaintiff Santiago at least $1,300 for these two weeks of work.

64.    Plaintiff Santiago's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

65.    For example, Defendants have required Plaintiff Santiago to work an additional 30 minutes past his scheduled departure time every day and have not paid him for the additional time he works.

66.    Defendants have only granted Plaintiff Santiago 15 to 20-minute breaks or meal periods two or three times a week, which have been often interrupted because he has been required to work during those breaks. However, Defendants have always deducted the meal break period from Plaintiff Santiago's weekly pay, whether he took the breaks or not, or whether they were interrupted or had to work during them.

67.    On a number of occasions, Defendants have required Plaintiff Santiago to sign a document, the contents of which he has not been allowed to review in detail.

68.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Santiago regarding overtime and wages under the FLSA and NYLL.

69.    Defendants have never provided Plaintiff Santiago an accurate statement of wages, as required by NYLL 195(3).

70.    However, in order to release his weekly pay, Defendants have required Plaintiff Santiago to sign a document which contains information about the amount of money he is being paid.

71.    Defendants have taken improper and illegal deductions from Plaintiff Santiago's wages; specifically, defendants have deducted several hours from Plaintiff Santiago's weekly wages for meal breaks they never have allowed him to take.

72.    Defendants have never given any notice to Plaintiff Santiago, in English and in Spanish (Plaintiff Santiago's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Carlos Enrique Toj Ovalle*

73.    Plaintiff Toj has been employed by Defendants from approximately March 2018 until on or about the present date.

74.    Defendants have employed Plaintiff Toj as a delivery worker.

75.    However, Plaintiff Toj has also been required to spend a significant portion of his work day performing the non-tipped duties described above.

76.    Although Plaintiff Toj has been employed as a delivery worker, he has spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

77.    Plaintiff Toj has regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

78.    Plaintiff Toj's work duties have required neither discretion nor independent judgment.

79.    Throughout his employment with Defendants, Plaintiff Toj has regularly worked in excess of 40 hours per week.

80.    For the month of March 2018, Plaintiff Toj worked from approximately 6:00 a.m. until on or about 2:00 p.m., 4 days a week and from approximately 6:00 a.m. until on or about 3:00 p.m., 1 day a week (typically 41 hours per week).

81.    From approximately April 2018 until the present date, Plaintiff Toj has worked from approximately 6:00 a.m. until on or about 5:00 p.m., 2 days a week and from approximately 6:00 a.m. until on or about 2:00 p.m., 3 days a week (typically 46 hours per week).

82.    Throughout his employment, Defendants have paid Plaintiff Toj his wages in cash.

83.    From approximately March 2018 until the present date, Defendants have paid Plaintiff Toj $13.00 per hour (but only for an average of 37.5 hours per week).

84.    Plaintiff Toj's pay has never varied even when he has been required to stay later or work a longer day than his usual schedule.

85.    For example, Defendants have required Plaintiff Toj to work an additional 1 hour past his scheduled departure time once a week and have not paid him for the additional time he works.

86.    Defendants have never granted Plaintiff Toj any uninterrupted breaks or meal periods because he always has been required to work during those breaks. However, Defendants always have deducted the meal break time from Plaintiff Toj's weekly pay, whether he takes the breaks or not, or regardless of whether they are interrupted.

87.    Plaintiff Toj has never been notified by Defendants that his tips are being included as an offset for wages.

88.    Defendants have not accounted for these tips in any daily or weekly accounting of Plaintiff Toj's wages.

89.    Defendants have withheld a considerable portion of Plaintiff Toj's tips; specifically, Defendants have pocketed a large percentage of his weekly tips.

90.    For example, on a week in which Plaintiff Topj had made at least 20 catering deliveries per day and many more regular credit card deliveries, defendants only paid him $36 in tips for the entire week.

91.    Defendants' time tracking device was inaccurate and did not reflect Plaintiff Toj's actual hours worked.

92.    On a number of occasions, Defendants have required Plaintiff Toj to sign a document, the contents of which he has not been allowed to review in detail.

93.    In addition, in order to get paid, Plaintiff Toj has been required to sign a document in which Defendants have misrepresented the hours that he has worked per week.

94.    Defendants have taken improper and illegal deductions from Plaintiff Toj's wages; specifically, defendants have deducted several hours from Plaintiff Toj's weekly wages for meal breaks they never have allowed him to take.

95.    No notification, either in the form of posted notices or other means, has ever been given to Plaintiff Toj regarding overtime and wages under the FLSA and NYLL.

96.    Defendants have never provided Plaintiff Toj an accurate statement of wages, as required by NYLL 195(3).

97.    Defendants have never given any notice to Plaintiff Toj, in English and in Spanish (Plaintiff Toj's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

98.    Defendants have required Plaintiff Toj to purchase "tools of the trade" with his own funds—including two black shirts and ten black jackets.

*Plaintiff Jerbi Elias Martinez Dominguez*

99.    Plaintiff Martinez was employed by Defendants from approximately March 2018 until on or about July 20, 2018.

100.  Defendants employed Plaintiff Martinez as a delivery worker and a food preparer.

101.  However, Plaintiff Martinez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

102.  Although Plaintiff Martinez was employed as a delivery worker and a food preparer, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

103.  Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

104.  Plaintiff Martinez's work duties required neither discretion nor independent judgment.

105.  Throughout his employment with Defendants, Plaintiff Martinez regularly worked in excess of 40 hours per week.

106.  From approximately March 2018 until on or about July 20, 2018, Plaintiff Martinez worked from approximately 6:00 a.m. until on or about 2:00 p.m., 3 days a week and from approximately 6:00 a.m. until on or about 2:30 p.m., 2 days a week (typically 41 hours per week).

107.  For approximately one week in April 2018, Plaintiff Martinez worked from approximately 6:00 a.m. until on or about 5:00 p.m. to 6:00 p.m., 3 days a week and from approximately 6:00 a.m. until on or about 2:00 p.m., 2 days a week (typically 49 to 52 hours per week).

108.  For his first week of employment, Defendants paid Plaintiff Martinez his wages in cash.

109.  From approximately March 12, 2018 until on or about July 20, 2018, Defendants paid Plaintiff Martinez his wages by check.

110.  From approximately March 2018 until on or about July 20, 2018, Defendants paid Plaintiff Martinez $13.00 per hour (but always only for an average of 37.5 hours).

111.  For his last week of employment, Defendants did not pay Plaintiff Martinez any wages for his work.

112.  Plaintiff Martinez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

113. For example, Defendants required Plaintiff Martinez to work an additional 30 minutes past his scheduled departure time one or two days a week and did not pay him for the additional time he worked.

114. Defendants never granted Plaintiff Martinez any uninterrupted breaks or meal periods because he was always required to work during those breaks. However, Defendants always deducted the meal break period from Plaintiff Martinez's weekly pay, whether he took the breaks or not, or whether they were interrupted or had to work during them.

115. Plaintiff Martinez was never notified by Defendants that his tips were being included as an offset for wages.

116. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Martinez's wages.

117. Defendants withheld a considerable portion of Plaintiff Martinez's tips; specifically, Defendants have pocketed a large percentage of his weekly tips.

118. For example, on a week in which Plaintiff Martinez had made at least 20 catering deliveries per day and many more regular credit card deliveries, defendants only paid him less than $100 in tips for the entire week.

119. Defendants' time tracking device was inaccurate and did not reflect Plaintiff Martinez's actual hours worked.

120. In addition, in order to get paid, Plaintiff Martinez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

121. Defendants took improper and illegal deductions from Plaintiff Martinez's wages; specifically, defendants deducted several hours from Plaintiff Martinez's weekly wages for meal breaks they never allowed him to take.

122.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Martinez regarding overtime and wages under the FLSA and NYLL.

123.  Defendants did not provide Plaintiff Martinez an accurate statement of wages, as required by NYLL 195(3).

124.  Defendants did not give any notice to Plaintiff Martinez, in English and in Spanish (Plaintiff Martinez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jorge Virgilio Roman Roman*

125.  Plaintiff Roman was employed by Defendants from approximately February 2018 until on or about July 23, 2018.

126.  On several occasions, Plaintiff Roman worked at Deli Plus, in addition to his employment at Delice Café and Catering.

127.  Defendants ostensibly employed Plaintiff Roman as a delivery worker.

128.  However, Plaintiff Roman was also required to spend a significant portion of his work day performing the non-tipped duties described above.

129.  Although Plaintiff Roman was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

130.  Plaintiff Roman regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

131.  Plaintiff Roman's work duties required neither discretion nor independent judgment.

132.  Throughout his employment with Defendants, Plaintiff Roman regularly worked in excess of 40 hours per week.

133.  From approximately February 2018 and then from approximately June 2018 until on or about July 23, 2018, Plaintiff Roman worked from approximately 8:00 a.m. until on or about 4:00 p.m., 3 days a week and from approximately 8:00 a.m. until on or about 4:30 p.m., 2 days a week (typically 41 hours per week).

134.  From approximately March 2018 until on or about May 2018, Plaintiff Roman worked from approximately 6:00 a.m. until on or about 2:00 p.m., 3 days a week and from approximately 6:00 a.m. until on or about 2:30 p.m., 3 days a week (typically 41 hours per week).

135.  For his first week of employment, Defendants paid Plaintiff Roman his wages in cash.

136.  From approximately February 2018 until on or about July 23, 2018, Defendants paid Plaintiff Roman his wages by check.

137.  From approximately February 2018 until on or about July 23, 2018, Defendants paid Plaintiff Roman $13.00 per hour (but only for an average of 30 hours per week).

138.  For approximately one week, Defendants did not pay Plaintiff Roman any wages for his work.

139.  Plaintiff Roman's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

140.  For example, Defendants required Plaintiff Roman to work an additional 30 minutes past his scheduled departure time two days a week and did not pay him for the additional time he worked.

141.  Defendants never granted Plaintiff Roman any uninterrupted breaks or meal periods because he was always required to work during those breaks. However, Defendants always deducted the meal break period from Plaintiff Roman's weekly pay, whether he took the breaks or not, or whether they were interrupted or had to work during them.

142.  Plaintiff Roman was never notified by Defendants that his tips were being included as an offset for wages.

143.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Roman's wages.

144.  Defendants withheld a considerable portion of Plaintiff Roman's tips; specifically, Defendants have pocketed a large percentage of his weekly tips.

145.  For example, on a week in which Plaintiff Roman ad made at least 20 catering deliveries per day and many more regular credit card deliveries, defendants only paid him less than $100 in tips for the entire week.

146.  Defendants' time tracking device was inaccurate and did not reflect Plaintiff Roman's actual hours worked.

147.  Specifically, whenever Plaintiff Roman arrived 10 or 15 minutes early, the machine would show that he started working at his scheduled starting time and not the actual time when he punched in or out. As a result, Plaintiff Roman was not compensated for all of the hours that he worked.

148.  In addition, in order to get paid, Plaintiff Roman was required to sign a document reflecting the amount of money for tips that he got per week.

149.  Defendants took improper and illegal deductions from Plaintiff Roman's wages; specifically, defendants deducted several hours from Plaintiff Roman's weekly wages for meal breaks they never allowed him to take.

150.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Roman regarding overtime and wages under the FLSA and NYLL.

151. Defendants did not provide Plaintiff Roman an accurate statement of wages, as required by NYLL 195(3).

152. In fact, Defendants adjusted Plaintiff Roman's paystubs so that they reflected inaccurate wages and hours worked.

153. Defendants did not give any notice to Plaintiff Roman, in English and in Spanish (Plaintiff Roman's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

154. Defendants required Plaintiff Roman to purchase "tools of the trade" with his own funds—including a bicycle.

### Plaintiff Oscar Celestino Yanez

155. Plaintiff Yanez was employed by Defendants from approximately November 2017 until on or about July 25, 2018.

156. Defendants ostensibly employed Plaintiff Yanez as a delivery worker.

157. However, Plaintiff Yanez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

158. Although Plaintiff Yanez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

159. Plaintiff Yanez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

160. Plaintiff Yanez's work duties required neither discretion nor independent judgment.

161. Throughout his employment with Defendants, Plaintiff Yanez regularly worked in excess of 40 hours per week.

162.  From approximately November 2017 until on or about July 10, 2018, Plaintiff Yanez worked from approximately 6:00 a.m. until on or about 2:00 p.m., Mondays through Fridays and from approximately 6:00 a.m. until on or about 3:00 p.m., on 5 occasions (typically 40 to 41 hours per week).

163.  From approximately July 10, 2018 until on or about July 25, 2018, Plaintiff Yanez worked from approximately 5:00 a.m. until on or about 1:00 p.m., Mondays through Fridays (typically 40 hours per week).

164.  Throughout his employment, Defendants paid Plaintiff Yanez his wages by check.

165.  From approximately November 2017 until on or about December 2017, Defendants paid Plaintiff Yanez $9.15 per hour (but only for an average of 33.5 hours per week).

166.  From approximately January 2018 until on or about July 25, 2018, Defendants paid Plaintiff Yanez $13.00 per hour (but only for an average of 33.5 hours per week).

167.  For his last week of employment, Defendants did not pay Plaintiff Yanez any wages for his work.

168.  Plaintiff Yanez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

169.  For example, Defendants required Plaintiff Yanez to work an additional 1 hour past his scheduled departure time on five occasions and did not pay him for the additional time he worked.

170.  Defendants never granted Plaintiff Yanez any uninterrupted breaks or meal periods because he was always required to work during those breaks. However, Defendants always deducted the meal break period from Plaintiff Yanez's weekly pay, whether he took the breaks or not, or whether they were interrupted or had to work during them.

171.  Plaintiff Yanez was never notified by Defendants that his tips were being included as an offset for wages.

172.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Yanez's wages.

173.  Defendants withheld a considerable portion of Plaintiff Yanez's tips; specifically, Defendants have pocketed a large percentage of his weekly tips.

174.  For example, on a week in which Plaintiff Yanez had made at least 20 catering deliveries per day and many more regular credit card deliveries, defendants only paid him a very less than $100 in tips for the entire week.

175.  Defendants' time tracking device was inaccurate and did not reflect Plaintiff Yanez's actual hours worked. Specifically, the machine would only record and show his scheduled hours, not the actual hours worked.

176.  On a number of occasions, Defendants required Plaintiff Yanez to sign a document, the contents of which he was not allowed to review in detail.

177.  In addition, in order to get paid, Plaintiff Yanez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

178.  Defendants took improper and illegal deductions from Plaintiff Yanez's wages; specifically, defendants deducted several hours from Plaintiff Yanez's weekly wages for meal breaks they never allowed him to take.

179.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Yanez regarding overtime and wages under the FLSA and NYLL.

180.  Defendants did not provide Plaintiff Yanez an accurate statement of wages, as required by NYLL 195(3).

181.   In fact, Defendants adjusted Plaintiff Yanez's paystubs so that they reflected inaccurate wages and hours worked.

182.   Defendants did not give any notice to Plaintiff Yanez, in English and in Spanish (Plaintiff Yanez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Rafael Vasquez Disla*

183.   Plaintiff Vasquez was employed by Defendants from approximately March 2018 until on or about July 19, 2018.

184.   Defendants ostensibly employed Plaintiff Vasquez as a delivery worker.

185.   However, Plaintiff Vasquez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

186.   Although Plaintiff Vasquez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

187.   Plaintiff Vasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

188.   Plaintiff Vasquez's work duties required neither discretion nor independent judgment.

189.   Throughout his employment with Defendants, Plaintiff Vasquez regularly worked in excess of 40 hours per week.

190.   From approximately March 2018 until on or about June 15, 2018, Plaintiff Vasquez worked from approximately 6:00 a.m. until on or about 2:00 p.m. to 3:00 p.m., Mondays through Fridays (typically 40 to 45 hours per week).

191.  From approximately June 16, 2018 until on or about July 19, 2018, Plaintiff Vasquez worked from approximately 7:00 a.m. until on or about 3:00 p.m. to 4:00 p.m., Mondays, Tuesdays, Wednesdays, Thursdays and Saturdays (typically 40 to 45 hours per week).

192.  Throughout his employment, Defendants paid Plaintiff Vasquez his wages by check.

193.  From approximately March 2018 until on or about July 19, 2018, Defendants paid Plaintiff Vasquez $13.00 per hour (but only for an average of 37.5 hours per week).

194.  Plaintiff Vasquez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

195.  For example, Defendants required Plaintiff Vasquez to work an additional 1 to 2 hours past his scheduled departure time three days a week and did not pay him for the additional time he worked.

196.  Defendants never granted Plaintiff Vasquez any breaks or meal periods of any kind. However, Defendants always deducted the meal break period that he never was granted from Plaintiff Vasquez's weekly pay.

197.  Plaintiff Vasquez was never notified by Defendants that his tips were being included as an offset for wages.

198.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Vasquez's wages.

199.  Defendants withheld all of Plaintiff Vasquez's tips.

200.  For example, on a week in which Plaintiff Vasquez had made at least 20 catering deliveries per day and many more regular credit card deliveries, defendants paid him absolutely nothing in tips for the entire week.

201. Defendants' time tracking device was inaccurate and did not reflect Plaintiff Vasquez's actual hours worked. Specifically, the machine would only record and show his scheduled hours, not the actual hours worked.

202. In addition, in order to get paid, Plaintiff Vasquez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

203. Defendants took improper and illegal deductions from Plaintiff Vasquez's wages; specifically, defendants deducted several hours from Plaintiff Vasquez's weekly wages for meal breaks they never allowed him to take.

204. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Vasquez regarding overtime and wages under the FLSA and NYLL.

205. Defendants did not provide Plaintiff Vasquez an accurate statement of wages, as required by NYLL 195(3).

206. In fact, Defendants adjusted Plaintiff Vasquez's paystubs so that they reflected inaccurate wages and hours worked.

207. Defendants did not give any notice to Plaintiff Vasquez, in English and in Spanish (Plaintiff Vasquez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Miguel Sampedro Sartillo*

208. Plaintiff Sampedro was employed by Defendants from approximately April 23, 2018 until on or about July 23, 2018.

209. Defendants ostensibly employed Plaintiff Sampedro as a delivery worker.

210. However, Plaintiff Sampedro was also required to spend a significant portion of his work day performing the non-tipped duties described above.

211.  Although Plaintiff Sampedro ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

212.  Plaintiff Sampedro regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

213.  Plaintiff Sampedro's work duties required neither discretion nor independent judgment.

214.  Throughout his employment with Defendants, Plaintiff Sampedro regularly worked in excess of 40 hours per week.

215.  From approximately April 23, 2018 until on or about July 23, 2018, Plaintiff Sampedro worked from approximately 6:00 a.m. until on or about 2:00 p.m. to 3:00 p.m., 5 days a week (typically 40 to 45 hours per week).

216.  Throughout his employment, Defendants paid Plaintiff Sampedro his wages in cash.

217.  From approximately April 23, 2018 until on or about July 23, 2018, Defendants paid Plaintiff Sampedro $13.00 per hour (but only for an average of 37.5 hours per week).

218.  Defendants did not pay Plaintiff Sampedro any wages for 52 hours of work.

219.  Plaintiff Sampedro's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

220.  For example, Defendants required Plaintiff Sampedro to work an additional 30 minutes to 1 hour past his scheduled departure time every day and did not pay him for the additional time he worked.

221.  Defendants only granted Plaintiff Sampedro 30-minute breaks or meal periods three times a week. However, Defendants always deducted the meal break period from Plaintiff

Sanpedro's weekly pay, whether he took the breaks or not, or whether they were interrupted or had to work during them.

222. Plaintiff Sampedro was never notified by Defendants that his tips were being included as an offset for wages.

223. Defendants withheld all of Plaintiff Sampedro's tips.

224. For example, on a week in which Plaintiff Sanpedro had made at least 20 catering deliveries per day and many more regular credit card deliveries, defendants paid him absolutely nothing in tips for the entire week.

225. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sampedro's wages.

226. Defendants took improper and illegal deductions from Plaintiff Sanpedro's wages; specifically, defendants deducted several hours from Plaintiff Sanpedro's weekly wages for meal breaks they never allowed him to take.

227. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sampedro regarding overtime and wages under the FLSA and NYLL.

228. Defendants did not provide Plaintiff Sampedro an accurate statement of wages, as required by NYLL 195(3).

229. Defendants did not give any notice to Plaintiff Sampedro, in English and in Spanish (Plaintiff Sampedro's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Rodrigo (a.k.a. Carlos) Flores Cazares*

230. Plaintiff Flores was employed by Defendants from approximately April 15, 2018 until on or about July 24, 2018.

231.  Defendants employed Plaintiff Flores as a pizza maker.

232.  Plaintiff Flores regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

233.  Plaintiff Flores's work duties required neither discretion nor independent judgment.

234.  Throughout his employment with Defendants, Plaintiff Flores regularly worked in excess of 40 hours per week.

235.  From approximately April 15, 2018 until on or about July 24, 2018, Plaintiff Flores worked from approximately 8:00 a.m. until on or about 4:00 p.m. to 5:00 p.m., Mondays through Fridays (typically 40 to 45 hours per week).

236.  Throughout his employment, Defendants paid Plaintiff Flores his wages in cash.

237.  From approximately April 15, 2018 until on or about July 24, 2018, Defendants paid Plaintiff Flores $14.00 per hour (but only for an average of 37.5 hours per week).

238.  For approximately two weeks, Defendants did not pay Plaintiff Flores any wages for his work.

239.  Plaintiff Flores's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

240.  For example, Defendants required Plaintiff Flores to work an additional 45 minutes to 1 hour past his scheduled departure time every day and did not pay him for the additional time he worked.

241.  Defendants never granted Plaintiff Flores any breaks or meal periods of any kind. However, Defendants always deducted the meal break period that they never granted from Plaintiff Flores's weekly pay.

242.  Defendants' time tracking device was inaccurate and did not reflect Plaintiff Flores's actual hours worked. Specifically, the machine would only record and show his scheduled hours, not the actual hours worked.

243.  On a number of occasions, Defendants required Plaintiff Flores to sign a document, the contents of which he was not allowed to review in detail.

244.  In addition, in order to get paid, Plaintiff Flores was required to sign a document in which Defendants misrepresented the hours that he worked per week.

245.  Defendants took improper and illegal deductions from Plaintiff Flores's wages; specifically, defendants deducted several hours from Plaintiff Flores's weekly wages for meal breaks they never allowed him to take.

246.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Flores regarding overtime and wages under the FLSA and NYLL.

247.  Defendants did not provide Plaintiff Flores an accurate statement of wages, as required by NYLL 195(3).

248.  In fact, Defendants adjusted Plaintiff Flores's paystubs so that they reflected inaccurate wages and hours worked.

249.  Defendants did not give any notice to Plaintiff Flores, in English and in Spanish (Plaintiff Flores's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

250.  Defendants required Plaintiff Flores to purchase "tools of the trade" with his own funds—including two pairs of shoes, and three pairs of pants.

*Plaintiff Malecio Sanchez Casado*

251.    Plaintiff Sanchez was employed by Defendants from approximately November 2017 until on or about June 2018.

252.    Defendants ostensibly employed Plaintiff Sanchez as a delivery worker, a packer and a catering dispatcher.

253.    However, Plaintiff Sanchez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

254.    Although Plaintiff Sanchez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

255.    Plaintiff Sanchez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

256.    Plaintiff Sanchez's work duties required neither discretion nor independent judgment.

257.    From approximately November 2017 until on or about June 2018, Plaintiff Sanchez worked from approximately 6:00 a.m. until on or about 2:00 p.m. 5 days a week for two weeks per month and from approximately 6:00 a.m. until on or about 2:00 p.m. 3 days a week for two weeks per month (typically 24 to 40 hours per week).

258.    From approximately November 2017 until on or about February 2018, Defendants paid Plaintiff Sanchez his wages in cash.

259.    From approximately March 2018 until on or about June 2018, Defendants paid Plaintiff Sanchez his wages by check.

260.    From approximately November 2017 until on or about December 2017, Defendants paid Plaintiff Sanchez $11.00 per hour (but only for an average of 37.5 hours per week on the

weeks he worked 40 hours per week and for an average of 22.5 hours per week on the weeks he worked 24 hours per week).

261.    Plaintiff Sanchez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

262.    For example, Defendants required Plaintiff Sanchez to work an additional 4 hours past his scheduled departure time at least twice per month and did not pay him for the additional time he worked.

263.    Defendants did not grant Plaintiff Sanchez breaks or meal periods of any kind. However, Defendants always deducted the meal break period that they never granted from Plaintiff Sanchez's weekly pay.

264.    Plaintiff Sanchez was never notified by Defendants that his tips were being included as an offset for wages.

265.    Defendants withheld all of Plaintiff Sanchez's tips.

266.    For example, Plaintiff Sanchez only received an average of $40 or $50 per week in tips, when he knows that the tips clients wrote for him were at least $500 per day.

267.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sanchez's wages.

268.    Defendants took improper and illegal deductions from Plaintiff Sanchez's wages; specifically, defendants deducted several hours from Plaintiff Sanchez's weekly wages for meal breaks they never allowed him to take.

269.    Although Plaintiff Sanchez was required to keep track of his hours, the machine he used to record those hours was sometimes broken so Defendants' time-keeping system was inaccurate and unreliable.

270.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sanchez regarding overtime and wages under the FLSA and NYLL.

271.    Defendants did not provide Plaintiff Sanchez an accurate statement of wages, as required by NYLL 195(3).

272.    Further, Defendants forced Plaintiff Sanchez to sign a document the content of which he knew was sometimes inaccurate, in order to release his weekly pay.

273.    Defendants did not give any notice to Plaintiff Sanchez, in English and in Spanish (Plaintiff Sanchez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

274.    Defendants required Plaintiff Sanchez to purchase "tools of the trade" with his own funds—including a pair of kitchen shoes.

*Plaintiff Hector Baten*

275.    Plaintiff Baten has been employed by Defendants from approximately May 2018 until on or about August 11, 2018.

276.    Defendants was employed Plaintiff Baten as a cook.

277.    Plaintiff Baten regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

278.    Plaintiff Baten's work duties required neither discretion nor independent judgment.

279.    Throughout his employment with Defendants, Plaintiff Baten regularly worked in excess of 40 hours per week.

280.    From approximately May 2018 until on or about August 11, 2018, Plaintiff Baten worked from approximately 6:00 a.m. until on or about 3:00 p.m., Mondays through Fridays and

from approximately 7:00 a.m. until on or about 11:00 a.m., on Saturdays (typically 49 hours per week).

281. Throughout his employment, Defendants paid Plaintiff Baten his wages in cash.

282. From approximately May 2018 until on or about August 11, 2018, Defendants paid Plaintiff Baten $14.00 per hour (but only for an average of 45 hours per week).

283. For approximately three weeks, Defendants did not pay Plaintiff Baten any wages for his work.

284. Plaintiff Baten's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

285. For example, Defendants required Plaintiff Baten to start working 10 to 15 minutes before his scheduled start time every day and did not pay him for the additional time he orked.

286. Defendants never granted Plaintiff Baten any breaks or meal periods of any kind. However, Defendants always deducted the meal break period that they never granted from Plaintiff Baten's weekly pay.

287. Defendants' time tracking device was inaccurate and did not reflect Plaintiff Baten's actual hours worked. Specifically, Defendants told Plaintiff Baten that his hours were not reflecting in the system, even when he used the machine correctly.

288. On a number of occasions, Defendants required Plaintiff Baten to sign a document, the contents of which he was not allowed to review in detail, but that misrepresented the hours Plaintiff Baten worked.

289. Further, in order to get paid, Plaintiff Baten was required to sign a document in which Defendants misrepresented the hours that he worked per week.

290. Defendants took improper and illegal deductions from Plaintiff Baten's wages; specifically, defendants deducted several hours from Plaintiff Baten's weekly wages for meal breaks they never allowed him to take.

291. No notification, either in the form of posted notices or other means, was never given to Plaintiff Baten regarding overtime and wages under the FLSA and NYLL.

292. Defendants did not provide Plaintiff Baten an accurate statement of wages, as required by NYLL 195(3).

293. In fact, Defendants adjusted Plaintiff Baten's paystubs so that they reflected inaccurate wages and hours worked.

294. Defendants did not give any notice to Plaintiff Baten, in English and in Spanish (Plaintiff Baten's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

295. At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

296. Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they have been owed for the hours they have worked.

297. Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

298.    Defendants have habitually required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

299.    Defendants have required Plaintiffs Toj, Martinez, Roman, Yanez, Vasquez, Sampedro and Sanchez, and all other delivery workers, to perform general non-tipped tasks in addition to their primary duties as delivery workers.

300.    These Plaintiffs and all similarly situated employees, have ostensibly been employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

301.    These Plaintiffs' duties have not been incidental to their occupation as tipped workers, but instead have constituted entirely unrelated general deli work with duties, including the non-tipped duties described above.

302.    These Plaintiffs and all other tipped workers have been paid at least at tip-credit wage rate by Defendants.

303.    Under state law, Defendants are not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceed 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

304.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

305.    In violation of federal and state law as codified above, Defendants have classified these Plaintiffs and other tipped workers as tipped employees and have paid them at a rate that is

at least at the tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

306.    Defendants have failed to inform Plaintiffs Toj, Martinez, Roman, Yanez, Vasquez, Sampedro and Sanchez, who received tips, that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

307.    Defendants have failed to inform these Plaintiffs who received tips, that their tips are being credited towards the payment of the minimum wage.

308.    Further, Defendants have taken improper deductions from Plaintiffs' wages for meal breaks that they have not been allowed to take or that have been interrupted.

309.    Defendants have failed to maintain a record of tips earned by Plaintiffs who have worked as delivery workers for the tips they received.

310.    As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs who have received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

311.    Defendants have unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

312.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

313.   Defendants' time keeping system has not reflected the actual hours that Plaintiffs have worked.

314.   Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

315.   On a number of occasions, Defendants have required Plaintiffs to sign a document the contents of which they have not been allowed to review in detail.

316.   Further, Defendants have required Plaintiffs to sign a document that reflected inaccurate or false hours worked, in order to release their weekly pay.

317.   Defendants have paid Plaintiffs their wages in cash and by checks showing fewer hours than those they had worked each week.

318.   Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

319.   Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for their full hours worked.

320.   Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

321.   Defendants' unlawful conduct is intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

322.    Defendants have failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

323.    Defendants have failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

324.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA and Rule 23 Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA and Rule 23 Class Period").

325. At all relevant times, Plaintiffs and other members of the FLSA and Rule 23 Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records as required under the FLSA.

326. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

327. Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

328. Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

329. The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

330. There are questions of law and fact common to the Class including:

    a)     What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

    b)     What were the policies, practices, programs, procedures, protocols and

plans of Defendants regarding payment of wages for all hours worked;

      c)     What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

      d)     Whether Defendants have failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

      e)     Whether Defendants have failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

      f)     Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

      g)     At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

      h)     What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

331.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

332.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

333.    The common questions of law and fact predominate over questions affecting only individual members.

334.    A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

335.    Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

336.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

337.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants have had the power to hire and fire Plaintiffs (and the FLSA and Rule 23 Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

338.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

339.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

340.  Defendants have failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

341.  Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members) at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

342.  Plaintiffs (and the FLSA and Rule 23 Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

343.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

344.  Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA and Rule 23 Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

345.  Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 Class members), overtime compensation has been willful within the meaning of 29 U.S.C. § 255(a).

346.  Plaintiffs (and the FLSA and Rule 23 Class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

347.  Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

348.  At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants have had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

349.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs (and the FLSA and Rule 23 class members) less than the minimum wage.

350.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

351.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

352.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

353.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, have failed to pay Plaintiffs' overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

354.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

355.    Plaintiffs have been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

356.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

357.    Defendants have failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours has exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

358.    Defendants' failure to pay Plaintiffs' an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours is willful within the meaning of NYLL § 663.

359.    Plaintiffs have been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

360.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

361.    Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

362.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

363.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

364.    With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

365.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

366.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

367.    Defendants have required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

368.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

### OF THE NEW YORK LABOR LAW

369.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

370.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

371.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

372.    Defendants have unlawfully misappropriated a portion of Plaintiffs' tips that have been received from customers.

373.    Defendants have knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

374.    Plaintiffs have been damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

### OF THE NEW YORK LABOR LAW

375.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

376.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

377.    Defendants made unlawful deductions from Plaintiffs' wages; specifically, they have deducted meal breaks from Plaintiffs' wages for meal breaks they have never been able to take.

378.    The deductions made from Plaintiffs' wages were not authorized or required by law.

379.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 et seq., and supporting New York State regulations.

380.    Plaintiffs have been damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

### VIOLATION OF THE TIMELY PAYMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

381.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

382.    Defendants have not paid Plaintiffs on a regular weekly basis, in violation of NYLL §191.

383.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(c)      Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA and Rule 23 Class members;

(d)      Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA and Rule 23 Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)      Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA and Rule 23 Class members;

(f)      Awarding Plaintiffs and the FLSA and Rule 23 Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)      Awarding Plaintiffs and the FLSA and Rule 23 Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)      Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants have violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)      Declaring that Defendants have violated the timely payment provisions of the

NYLL as to Plaintiffs;

(l)    Declaring that Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)    Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order are willful as to Plaintiffs;

(n)    Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)    Awarding Plaintiffs and the FLSA and Rule 23 Class members pre-judgment and post-judgment interest as applicable;

(r)    Awarding Plaintiffs and the FLSA and Rule 23 Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
August 15, 2018

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2018

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Jorge Virgilio Roman Roman
Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:                       JORGE Roman

Date / Fecha:                            26 de julio de 2018

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jerbi Elias Martinez Dominguez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     26 de Julio del 2018

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Oscar Celestino Yanez

                                  Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:

                                  26 de julio de 2018

Date / Fecha:

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Alex Santiago

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                           26 de julio de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2018

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Carlos Enrique Toj Ovalle

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     26 de julio de 2018

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

————

Faillace@employmentcompliance.com

July 30, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Rafael Vasquez Disla

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              30 de julio de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 30, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:    Miguel Sampedro Sartillo

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:    30 de julio de 2018

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

July 30, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Rodrigo Flores Cazares (a.k.a. Carlos Flores)

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      30 de julio de 2018

_Certified as a minority-owned business in the State of New York_

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

August 7, 2018

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                    Melecio Sanchez Casado

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     August 7, 2018

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 10, 2018

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Hector Baten
Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      10 de agosto de 2018

*Certified as a minority-owned business in the State of New York*